CHARLES JOHNSON v. MARTIN, TAYLOR & CO.

1. SHIPPING.   *Inspection by wardens.   Statutes of Louisiana.*
     The statute of Louisiana, March 16, 1877, providing that wardens of the port of New Orleans shall inspect the hatches of vessels and survey damaged cargoes, and give orders for sales thereof when called on by the master of any vessel coming into that port, is not a substantial re-enactment of the statute of March 6, 1869, forbidding any person except the warden to perform such service; and the latter statute is valid although the former was held unconstitutional by the supreme court of the United States as being a regulation of foreign and inter-state commerce.

2. SAME.   *Evidence.   Official records of another state.   Entry by port wardens.*
     Since the said act of 1877 requires the said wardens to enter in books kept for that purpose a record of their surveys, etc., copies of such entries properly certified by such wardens are admissible in evidence in the courts of this state without further proof.   Code 1880, § 1622.

3. SAME.   *Sale of vessel and cargo.   Authority to sell.*
     Without regard to the validity or effect of said statutes, if a stranded ship

and cargo be sold at auction under the order of such wardens, the certified copy of such entry and the bill of sale executed by the auctioneer, which recite that the sale was by authority of the owner of the vessel and cargo, is competent evidence of title in the purchaser.

FROM the circuit court of Harrison county.

HON. S. H. TERRAL, Judge.

A foreign vessel loaded with lumber was stranded off the Mississippi coast, and in this condition the vessel and cargo were inspected by the wardens of the port of New Orleans and a sale thereof recommended for account of whom it might concern. Pursuant to this order or recommendation, the vessel and cargo were sold in that city by a duly licensed auctioneer and purchased by appellees. Some of the lumber on board the ship, having been thrown overboard, floated to the shore of the island near which the vessel was stranded. Appellees, after their purchase, sent one Walsh in charge of a crew to raise the ship and save the cargo. The evidence is conflicting as to whether the lumber was thrown overboard before or after appellees' purchase. Appellant, Johnson, having found the lumber on the shore, procured a tug and towed it to the main land. While in the act of removing it, he was seen by Walsh, who testifies that he warned him not to interfere with it.

This is an action of replevin brought by Martin, Taylor & Co. against Johnson to recover the lumber. On the trial plaintiffs introduced in evidence a certified transcript from the records in the office of the wardens of the port of New Orleans, which transcript recites that the wardens had been required by parties interested to inspect the vessel and cargo ; that they had recommended the sale for account of whom it might concern and attended the auction sale. Plaintiffs then introduced a bill of sale executed by the auctioneer, which recites that the sale had been made "by order of the port wardens, and Capt. Charles Hannary and DeWolfe & Hammond, agents," and that appellees had purchased the vessel and cargo and paid for the same. This evidence was objected by the defendant on the ground of incompetency, but the objection was overruled, the court holding by its ruling on the evidence and by instructions given for the plaintiffs, that the certificate of the

wardens was evidence without further proof, and that the bill of sale was competent as evidence of title in appellees. The opinion contains a further statement of the facts. The judgment was in favor of plaintiffs, and defendant has appealed.

*E. J. Bowers*, for appellant.

Plaintiffs were never in possession of the property, and they can only recover upon their title derived under the sale at auction made upon the recommendation and certificate of the wardens. The power of the wardens to inspect extends only to damaged *goods* arriving in the port of New Orleans. It is not contended that the cargo in this case was damaged, but only that the *vessel* was in distress. There was no authority for the wardens to act. But, granting that the statutes of Louisiana intended to vest the wardens with this power, the statutes are wholly repugnant to the federal constitution. *Foster* v. *Master, etc.*, 94 U. S. 246.

The bill of sale, if competent, does not attempt to convey any cargo not on board at the time of sale. The evidence shows that the lumber in controversy had been cast overboard before the sale. The certificate of the wardens does not show that they acted with the authority of the owners or their agents. It was error for the court to rule that the certificate itself was evidence of such assent by the agents of the owners.

*Robert Lowry*, for appellees.

Appellants set up no claim or semblance of right to the lumber. Appellees got a perfect title by their purchase at the auction sale. The cargo embraced the lumber on the beach as well as that on board, and, after their purchase, appellees exercised ownership over it, and warned appellant not to interfere with it. The certificate of the wardens and the bill of sale show that the agents of the ship procured its sale. This certainly vested title in the purchaser, especially as against a trespasser. Granting that the Louisiana statutes are void, that cannot aid the appellant. The sale was made by authority of the owners, and surely the concurrence of the wardens cannot vitiate it. If the sale be voidable, it cannot be avoided at the instance of appellant.

*Robert Lowry*, for the appellees, made an oral argument.

WOODS, C. J., delivered the opinion of the court.

We find ourselves unable to agree with counsel for appellant touching the title of appellees to the ship and cargo.

The act of the legislature of the State of Louisiana, approved March 6, 1869, which was condemned by the supreme court of the United States in *Foster* v. *Master and Wardens*, 94 U. S. 246, because of its conflict with sec. 8, art. 1, constitution of the United States, was not, in our opinion, substantially re-enacted by the act of the legislature of Louisiana, approved March 16, 1877, as supposed by counsel. On the contrary, as we think, the last named act was adopted subsequent to the decision in above case, and, as appears to us, was framed to meet the views of the court in that case. The act of 1869, made it unlawful for any person other than the wardens of the port of New Orleans, to make any survey of the hatches of vessels coming into that port, or to make any survey of damaged goods coming on board of such vessels, or to give certificates or orders for sale of such damaged goods at auction, or to do any other act prescribed by law for said wardens to do, and provides a penalty of one hundred dollars to be paid to said wardens in each instance, by any person, other than said wardens, doing any of the forbidden acts. This was held by the supreme court of the United States, to be a regulation of both foreign and inter-state commerce, and therefore unconstitutional.

The act of March 16, 1877, contains no such provisions, but, as has been already said by us, was apparently framed to meet the objections of the court to the former statute. In this act, the wardens are to inspect and survey and certify when called upon by the master of the vessel. The master is not obliged to call upon the wardens to act, nor is any other person forbidden to do any of the acts which the wardens may do, upon request of ship-masters.

The transcript from the records in the office of the wardens of the port of New Orleans was properly admitted in evidence. Under the 2d section of the act of 1877, the wardens are required to cause to be made in books kept for that purpose, an entry of all their surveys, etc., and certified copies of such entries under the official signature of either of the wardens, are made admissible in

evidence without further proof.   By section 1622, code of 1880, of Mississippi, copies of records required by the laws of other states to be kept and recorded, are, when certified by the clerk in whose office the records are kept under his seal of office, made admissible in evidence in the courts of this state.   The wardens of the port of New Orleans are the makers and keepers of the records in their office, and by the spirit of our statute, if not by its very letter, transcripts from the records in their office properly certified, are entitled to be received as any other copies of foreign records.

Whatever may be the proper construction of the Louisiana stat-ute which we are considering, and whatever dignity attaches to the records of the office of wardens of the port created by the act, we are unable to see any real ground for appellant's contention as to the bill of sale of the ship and cargo by Homes, the auctioneer. We are unable to see why the bill of sale made by authority of the recognized agents of the owners of the vessel was not competent evidence to show title in appellees, even if the port wardens had never made a survey or certificate.   It must be true that the au-thorized agents of the owners of the vessel could sell, and convey the property, and make a good title to the same.   That there was a sale of this character, at any rate, and payment of the purchase price by appellees, and acquiescence in the transaction by the owners of the vessel, is not to be disputed on the record before us. The bill of sale was properly admitted and was competent evidence of title in appellees to the vessel and cargo.

The remaining question raised by the assignment of error is, "did the sale of the ship and her cargo vest title in the purchasers to the ship and cargo, that portion which had been cast overboard to lighten ship, and was at hand on the beach of Chandeleur Island, as well as that remaining in the vessel, or only this latter part?"

This inquiry we need not answer, for without undertaking to settle this vexed question, it may confidently be declared that the verdict of the jury and the judgment of the court may be safely affirmed before this inquiry can be said to demand solution at our hands.

All the timber in controversy here was found on Chandeleur

beach, and was carried away by appellant after he or his tug-master had been duly notified of the rights of appellees in the premises, and without the semblance of a pretext of right on the part of the trespasser. This timber, thus wrongfully taken, the jury was warranted from the evidence of John Walsh, in believing was not only a part of the cargo of the stranded ship, but was actually a part of the cargo which was cast out and overboard by the employés of appellees in their efforts to lighten the vessel pre-paratory to pumping out and raising her, after they had taken pos-session of the ship and cargo.

We do not forget that there was evidence showing that the timber was on the beach before the sale of the vessel to appellees, but the jury had the right to accept the clear and reasonable and consistent statement of Walsh, and did so properly, as we strongly incline to think.

That the judgment is eminently just, we entertain no sort of doubt, and no possible injury can result to appellant by an affirm-ance, since his only claim to the wrecked vessel's cargo, which had been cast ashore, arose out of his unprecedented and unwarranted possession of it for a short time.

*Affirmed.*